IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA I., | ) |
|     Plaintiff, | ) No. 22 C 4087 |
| v. | ) Magistrate Judge M. David Weisman |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Angela I., appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Acting Commissioner's decision.

**Background**

This appeal concerns two separate claims for disability benefits made by Plaintiff. First, on September 16, 2015, Plaintiff filed an application for benefits alleging a disability onset date of August 12, 2015. (R. 224) (the "Disability Insurance Benefits Application"). Following a hearing before Administrative Law Judge ("ALJ") Deborah Ellis on March 29, 2018, the ALJ rendered an unfavorable decision. (R. 224-241). The Appeals Council granted Plaintiff's request for review, and the Appeals Council then remanded the application for further proceedings. (R. 249). Following a second hearing, the ALJ denied the claim on March 10, 2020 (R. 256-270), and the Appeals Council again remanded the application for further review. (R. 279-280).

Separately, on January 28, 2021, Plaintiff applied for supplemental security income. (R. 9, 509) (the "Supplemental Security Income Application"). Plaintiff requested that this

application be escalated to the hearing level, and at Plaintiff's third hearing for the Disability Insurance Benefits Application, ALJ Patricia Supergan granted this request. (R. 141-142). ALJ Supergan then considered both applications, and on July 2, 2021, ALJ Supergan denied both claims. (R. 15).

Plaintiff requested a review by the Appeals Council, and the Appeals Council denied the request as to the Disability Insurance Benefits Application (R. 1), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). However, the Appeals Council issued a separate order "dismissing" the Supplemental Security Income Application for what appear to be procedural reasons.[1] (R. 8-11).

## Discussion

### The Disability Insurance Benefits Application

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," i.e., " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[1] The current posture of Plaintiff's Supplemental Security Income Application is unclear.

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2015. (R. 17-18.) At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, bipolar disorder, anxiety, post traumatic stress disorder, borderline personality disorder, and polysubstance abuse disorder[.]" (R. 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work but with the following limitations:

> "she can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. She can tolerate occasional exposure to and can occasionally work around vibration and hazards such as moving machinery or unprotected heights. She can perform work that involves simple routine tasks requiring no more than short simple instructions and simple work related decision-

making with few work place changes. She can maintain occasional contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and co-workers." (R. 22).

Plaintiff first argues that the ALJ reversibly erred by failing to properly evaluate medical opinion evidence from Dr. Michael Carney and Dr. Jeffrey Karr.

20 C.F.R. § 404.1527(c) delineates how medical opinion evidence will be evaluated for claims filed before March 27, 2017 (which includes the instant claim). Specifically, the regulation enumerates various factors that the Commissioner will consider in determining how much weight to give any medical opinion. The factors include: (1) Examining relationship; (2) Treatment relationship (including the length of treatment relationship and the frequency of examination); (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors.

Medical expert Michael Carney, PhD, testified at the 2021 hearing that, *inter alia,* Plaintiff was limited to simple, routine tasks and occasional contact with the public. (R. 147). The ALJ gave this opinion great weight "because it is well-supported by the record." (R. 26). The ALJ did not further elaborate. Earlier in the written opinion, the ALJ noted Dr. Carney's findings when discussing Plaintiff's limitations in the four areas of functioning, followed by a recitation of certain record evidence. (R. 21).

Plaintiff first argues that the ALJ's evaluation of Dr. Carney's opinion was deficient because her evaluation did not properly analyze the factors listed in 20 C.F.R. § 404.1527(c). The Commissioner responds by arguing that the ALJ need only "minimally articulate" her reasoning (citing *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)), implying that a recitation and evaluation of all the regulatory factors is not always necessary when evaluating medical opinion evidence. In this case, the Commissioner contends that the ALJ minimally articulated her reasoning by writing that Dr. Carney's opinion was well supported by the record, and by citing to

4

other evidence in the record, along with Dr. Carney's findings, within the ALJ's Step Three analysis.

We agree with Plaintiff; the evaluation of Dr. Carney's opinion is not supported by substantial evidence. Even if it is true that an ALJ need not expressly apply all (or even the majority) of the regulatory factors when evaluating a medical opinion within a written decision, the ALJ's evaluation of Dr. Carney's opinion is still unavailing. Indeed, the ALJ also failed to explain her finding that Dr. Carney's opinion was well-supported. The Commissioner posits that the ALJ's Step Three analysis (discussing plaintiff's limitations in the four areas of functioning) sufficiently connected her evaluation of Dr. Carney's opinion to the record. We disagree. The ALJ used no connecting language to describe how the recited evidence purportedly supported Dr. Carney's opinion. Put simply, the ALJ failed to build a logical bridge from the record evidence to her finding that Dr. Carney's opinion was well-supported and therefore entitled to great weight. *See Roddy v. Astrue*, 705 F. 3d 631, 636 (7th Cir. 2013) (finding that the ALJ's conclusion regarding a medical opinion lacked the requisite logical bridge from the record evidence).[2]

Next, Plaintiff argues that the ALJ's evaluation of Dr. Jeffrey Karr's opinion was reversibly deficient. We agree. Dr. Karr performed a consultative examination of plaintiff on December 14, 2017, and opined that Plaintiff had marked restrictions in her ability to: carry out complex instructions, make judgments on complex work-related decisions, respond appropriately to usual work situations, and interact appropriately with the public, supervisors, or coworkers.

---

[2] The Commissioner argues that, even if the ALJ erred in her evaluation of Dr. Carney's opinion, it was harmless because remanding for a further discussion of evidence is unnecessary if it would not materially change the ALJ's findings. We need not decide whether the error as to the evaluation of Dr. Carney's opinion was harmless because, as discussed, *infra*, the ALJ's deficient evaluation of Dr. Karr's opinion was clearly not harmless error.

(R. 1488-1489). The ALJ gave these opinions "little weight" because Dr. Karr "provided no precise… limitations …" (R. 27). The ALJ also explained her rejection of Dr. Karr's opinion on the "more important" basis that Dr. Karr's opinion was based on a "one-time evaluation of the claimant." (R. 27).

As a preliminary matter, the Commissioner's rejection of an agency doctor's opinion causes a reviewing court to take notice and await a good explanation. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). The ALJ's first explanation for rejecting Dr. Karr's opinion was that the opinion did not provide precise limitations. However, as noted by Plaintiff, Dr. Karr's opinions were formatted based on the prompts of an agency form. (R. 1488-1489). Thus, it is unclear what more information Dr. Karr could have provided based on the form that was presented to him by the agency itself. Moreover, if the ALJ needed more specific information from the consultative examiner, the ALJ could have simply requested more information.[3] Additionally, the ALJ indicated that her final and most important consideration in rejecting Dr. Karr's opinion was the fact that it was based on a one-time evaluation. However, the ALJ did not adhere to this principle elsewhere in her decision when she awarded great weight to a *non-examining* source in Dr. Carney. *See* 20 C.F.R. 404.1527(c)(1) and 416.927(c)(1) (stating that the Commissioner will give more weight to the medical opinion of a source who has examined a claimant than to a source who has conducted no examination). This incongruence is especially glaring because the ALJ failed to explain the discrepancy in any meaningful way, failed to apply

---

[3] 20 C.F.R. § 404.1519p(b) provides that, when a consultative examiner's report is "inadequate or incomplete," the Commissioner will "contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask the medical source to furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1520b also contemplates the Commissioner contacting a medical source to request additional evidence in the event that clarification or supplementation of evidence is needed.

6

the regulatory factors, and otherwise failed to logically connect her conclusions to evidence in the record.

Further, the error was not harmless because Dr. Karr's opinions, if adopted instead of rejected, may have resulted in a finding of disability. For example, Dr. Karr opined that Plaintiff had marked limitations in her ability to interact with the public, coworkers, and supervisors (R. 1489). Yet, in crafting the RFC, the ALJ only significantly limited Plaintiff's interactions with the general public—not coworkers and supervisors. (R. 22). Moreover, the vocational examiner was not questioned as to whether limitations as to the quality of interactions with supervisors and coworkers might impact the jobs available for Plaintiff. It is reasonable to infer that significant limitations as to a claimant's ability to communicate with co-workers and supervisors would substantially narrow (if not eliminate) a claimant's job prospects. This inquiry was left unexplored by the ALJ. Thus, we cannot say that the error was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (determining that an error is only harmless if it is predictable with "great confidence that the agency will reinstate its decision on remand because the decision is so overwhelmingly supported by the record though the agency's original opinion failed to marshal that support[.]").[4]

### The Supplemental Security Income Application

More than five years after initially filing her Disability Insurance Benefits Application, Plaintiff filed her Supplemental Security Income Application. Plaintiff requested that this application be escalated to the hearing level, and ALJ Patricia Supergan granted this request. (R. 141-142). ALJ Supergan then considered both the Disability Insurance Benefits Application and

---

[4] Because the ALJ reversibly erred in her evaluation of medical opinion evidence, we need not address the other issues raised by Plaintiff as to the Disability Insurance Benefits Application.

the Supplemental Security Income Application. On July 2, 2021, ALJ Supergan denied both claims. (R. 15).

Plaintiff requested a review by the Appeals Council, and the Appeals Council dismissed the Supplemental Security Income Application (R. 1), noting that the Supplemental Security Income Application should not have been escalated to the hearing level because there was no common issue present between that application and the Disability Insurance Benefits Application. According to the Appeals Council, instead of rendering a decision on the merits, the ALJ should have sent the Supplemental Security Income Application back to the field office for an initial determination. The Appeals Council therefore "dismiss[ed]" the Supplemental Security Income Application.

Plaintiff argues that the dismissal of her Supplemental Security Income Application by the Appeals Council deprived her of due process.[5] Further, Plaintiff argues that she has no recourse to appeal the decision, because no "final decision" was rendered based on the Appeals Council's dismissal on procedural grounds. Indeed, Plaintiff contends that the Appeals Council failed to follow its own instructions by failing to send the Supplemental Security Income Application back to the field office for an initial determination. Consequently, Plaintiff asserts that her Supplemental Security Income Application was dismissed on procedural grounds, leaving Plaintiff with no ability to receive a decision on the merits of that application. Thus, Plaintiff claims a due process deprivation.

The Commissioner argues that Plaintiff is incorrect, because Plaintiff has supplied no evidence that the Supplemental Security Income Application is *not* currently being processed at

---

[5] *See Richardson v. Perales*, 402 U.S. 389, 401-402 (1971) (describing due process applicable to social security administrative proceedings).

the initial or redetermination level, and that this Court is not the proper forum to address administrative oversights. Further, the Commissioner coldly suggests that Plaintiff simply call her local field office to sort through any administrative issues regarding the Supplemental Security Income Application.[6]

The Court finds that the issue of whether Plaintiff's due process rights were violated is not ripe for decision. Indeed, it is unclear from this record whether Plaintiff's Supplemental Security Income Application remains pending with the agency or not. Neither side attempted to build much of a record on this issue. Thus, because the parties cannot even agree as to whether the underlying application is or is not pending—which strikes this Court as absurd[7]—the Court is not in a position to rule on the merits of Plaintiff's due process claim.

## Conclusion

For the reasons set forth above, the Court reverses the Acting Commissioner's decision, grants, in part, the plaintiff's motion for summary judgment [15], denies the Acting Commissioner's motion for summary judgment [20], and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                                    ENTERED:  September 19, 2023

**M. David Weisman**
**United States Magistrate Judge**

---

[6] In the reply brief, Plaintiff claims that she did follow up with her local office and was unable to receive any insight as to the status of her Supplemental Security Income Application. Plaintiff maintains that the application is no longer being processed by the agency.

[7] It defies logic that neither party—especially the Commissioner herself— can confirm with certainty whether plaintiff's Supplemental Security Income Application remains pending with a local field office, or not.